COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS






PHILLIP ZUNIGA,

                            Appellant,

V.

THE STATE OF TEXAS,

                            Appellee.

§
 
§
 
§
 
§
 
§
 
 §

 §


No. 08-08-00314-CR

Appeal from the

243rd District Court

of El Paso County, Texas 

(TC# 2007ODO1219) 





O P I N I O N

            Phillip Zuniga appeals his conviction for felony domestic violence assault causing bodily
injury. He was sentenced to 10 years’ imprisonment, suspended to 10 years’ probation, and fined
$10,000. On appeal, he raises two issues challenging the propriety of charging instrument in his
prior misdemeanor, domestic violence conviction, as well as the trial court’s decision to overrule
defense counsel’s hearsay objections to police officer witness testimony.
            On the morning of December 7, 2006, Officer Jamie Cordero and his partner were on 
patrol when a dispatcher requested their return to the El Paso Police Department’s Central
Command office to meet with a woman who wanted to make a criminal report. When the
officers arrived, at approximately 8:40 a.m., Officer Cordero observed that the woman’s face was
red, her left eye and lip were swollen, and she had abrasions on her forehead. When Officer
Cordero asked what had happened to her, she appeared nervous and scared. She stuttered as she
spoke, and paced with her arms wrapped around her torso.
            The woman identified herself as Ms. Gabriela Zamarripa. She told the officers that she
has been assaulted the night before by Appellant, her live-in boyfriend. She and Appellant had
been out at an El Paso bar the night before. When they got home, the two began to argue about a
prior incident when Ms. Zamarripa scratched Appellant’s face. They continued to argue as they
got out of the car and walked toward the front door of the residence. As Ms. Zamarripa
approached the front door, Appellant grabbed her hair from behind and forced her to the ground. 
After the assault, Appellant collected the couple’s cell phones and threw them out into the front
yard to prevent Ms. Zamarripa from calling the police.
            Based on this information, the officers informed Ms. Zamarripa that they would have to
go to the residence to meet with Appellant, and investigate further. Ms. Zamarripa told the
officers she did not want to return to the house because she was afraid of Appellant. Officer
Cordero continued to talk with Ms. Zamarripa while she calmed down, and eventually she agreed
to go back to the house.
            When the officers arrived at the residence, Ms. Zamarripa told them they could enter
through the front door, which was unlocked. She remained several houses away as the police
began their investigation. As Officer Cordero entered the house, he noticed an interior door was
damaged. The officers proceeded through the house and found Appellant in a back bedroom. He
was immediately arrested and removed from the house. After Appellant was arrested, Officer
Cordero took several photographs of the house and of Ms. Zamarripa’s injuries. In addition to
documenting the injuries to her face, the officers took a photograph of an abrasion on
Ms. Zamarripa’s knee, and another of bruising on the left side of her abdomen. The photographs
of the house depicted the damage to the interior door, in addition to images of two cell phones
which the officers located in the front yard. One of the phones was broken and had hair hanging
off its casing.
            Appellant was charged with domestic violence assault, enhanced to a felony offense by a
prior domestic violence conviction. He filed a motion to quash the indictment, which the trial
court denied, and was convicted of the charged offense by a jury.
            In Issue One, Appellant contends the trial court’s ruling denying his motion to quash was
in error, and entitles him to reversal. A trial court’s ruling on a motion to quash an indictment is
generally reviewed for an abuse of discretion. State v. Rivera, 42 S.W.3d 323, 328 (Tex.App.--El
Paso 2001, pet. ref’d). However, the issue of an indictment’s sufficiency is a quesiton of law,
subject to review de novo. State v. Moff, 154 S.W.3d 599, 601 (Tex.Crim.App. 2004). Still,
when the resolution of that legal inquiry depends on evaluation of witness credibility and
demeanor, the trial court is the “judicial actor” in the superior position to decide the issue. See
Moff, 154 S.W.3d at 601.
            Appellant’s motion to quash was based in his contention that the record in his prior
conviction indicated his plea bargain and the judgment of conviction were signed prior to the
presentment of the information. According to Paragraph A of Appellant’s 2007 indictment for
felony domestic violence:
[[O]n or about the 7th day of December, 2006, . . . [Appellant]] did then and there
intentionally, knowingly, and recklessly cause bodily injury to Gabriela
Zamarripa, a member of [Appellant’s] family or household, by pulling Gabriela
Zamarripa’s hair with [Appellant’s] hand,
And it is further presented in and to said Court that, prior to the
commission of the aforesaid offense, said [Appellant] was previously convicted of
an offense against a member of [Appellant’s] family or household under section
22.01 of the Texas Penal Code, to wit: on the 21st day of October, 1999, in cause
number 99OC12479 in the County Court at Law No. 6 of El Paso County, Texas,

            According to Appellant’s motion to quash, the charging instrument in the 99OC12479
case was defective because, the file stamp on the information indicated that it was not filed until 
“11-20-1999” (November 20, 1999), approximately one month after Appellant plead guilty to the
misdemeanor charges. The judgment in the misdemeanor case indicated it was signed on 
October 21, 1999. Appellant signed the plea bargain agreement in the case on October 21, 1999.
            During the hearing on Appellant’s motion, defense counsel argued that the felony
indictment was void, as enhanced, because the prior family violence allegation contained in the
2007 indictment was based on a plea agreement that was made and signed a month before the
information was filed. The trial court concluded that the hand written filing date referring to 
“11-20” was a misprint by the clerk’s office, and that filing date should have been recorded as 
“10-20.” Based on its factual conclusion, the court denied Appellant’s motion to quash.
            Appellant raised the issue again immediately prior to trial, at which time the State
produced evidence by witness testimony to demonstrate that the “11-20” file mark was a
misprint. The State’s first witness on this issue was Ms. Angie Meyers, a court clerk in the
El Paso County Clerks’ Office. According to Ms. Meyers, the County’s computerized records
showed that the complaint and the information were electronically filed with her office on “10-20
of ‘99.”
            The State also called, Ms. Michelle Rodarte, the supervisor for the Civil and Criminal
Department for the County Clerks’ Office. Ms. Rodarte testified that she was working in the
County Clerk’s office in 1999, and was also involved in creating and implementing the
procedures her office uses to file complaints and information in misdemeanor cases. According
to Ms. Rodarte, in 1999, once a complaint was entered into the County’s computer system, the
computer electronically noted the date on which the information regarding the type of offense,
etc., was entered. In addition, during the data input, a clerk would have been required to refer to
the paper documents related to the case. Due to the duel documentation, Ms. Rodarte opined, as
records custodian for her office, that the electronic date assignment, October 21, or “10-21,” in
this case, would be more accurate than the “11-21” clerk’s notation which would have been
created by hand.
            Furthermore, Ms. Rodarte testified that the judge in the misdemeanor case noted in
writing that Appellant plead guilty to the misdemeanor charged on “10-21-99.” She explained
that in order for the judge in that case to have been able to make the notation, he would have
viewed the complaint and information, which would have been filed and entered in to the court’s
criminal docket in October, rather than November. As Ms. Rodarte testified: “[if the complaint
and information were] filed in November 20th, the documents wouldn’t be inside the file” in
October when the trial court judge made the “October” notations on the file. Based on the
State’s evidence, the trial court again concluded that the “11-20” notation was a misprint, and
overruled Appellant’s motion to quash.
            In this instance, the trial court was presented with a significant amount of documentary
evidence and witness testimony in support of the State’s theory that the “11-21” file mark on the
information from the 1999 case was a misprint, and that the balance of the documentation,
including the electronic records and the notations made by the judge who handled the case
demonstrated that the information was, in fact, on file at the time of Appellant’s plea. Because
the trial court was in a superior position to make such factual determination we must show
appropriate deference to the court’s fact findings. See Moff, 154 S.W.3d at 601. Based on those
findings, we conclude the indictment was not deficient due to the file mark on the 1999 charging
instrument, and further conclude the trial court did not abuse its discretion by denying
Appellant’s motion. Issue One is overruled.
            In Issue Two, Appellant argues the trial court abused its discretion by allowing El Paso
Police Officer Jamie Cordero, to testify to what Ms. Zamarripa told him when she came to the
police station to make a report the morning after the incident which was the basis for the 2007
indictment. Appellant contends Officer Cordero’s testimony was inadmissable on two grounds:
(1) that Ms. Zamarripa’s statements to him did not constitute excited utterances, and were
therefore inadmissible hearsay; and (2) that regardless of the hearsay nature of the testimony,
Officer Cordero’s testimony runs afoul of the Confrontation Clause. We will address each
argument in turn.
            We review a trial court’s decision to admit evidence under the excited utterance
exception to the hearsay rule for an abuse of discretion. Zuliani v. State, 97 S.W.3d 589, 595
(Tex.Crim.App. 2003). A trial court does not abuse its discretion by admitting or excluding
evidence unless its ruling is outside the zone of reasonable disagreement. Id. The “excited
utterance” exception to the hearsay rule allows statements, “relating to a startling event or
condition made while the declarant was under the stress of excitement caused by the event or
condition.” Tex.R.Evid. 803(2); Arzaga v. State, 86 S.W.3d 767, 774-75 (Tex.App.--El Paso
2002, no pet.). The law regards an “excited utterance” to be sufficiently trustworthy to be
admissible as a hearsay exception, “because it represents an event speaking through the person
rather than the person speaking about the event.” Zuliani, 97 S.W.3d at 595. A statement must
meet the three requirements to qualify as an excited utterance: (1) it must be the product of a
startling event; (2) it was made while the declarant was still dominated by the emotion,
excitement, fear, or pain of the event; and (3) it relates to the circumstances of the startling event. 
See Apolinar v. State, 155 S.W.3d 184, 186-87 (Tex.Crim.App. 2005). Although the amount of
time between the event and the utterance, and the manner in which the statement is made are
factors to consider when determining whether the declarant was still under the influence of the
event at the time of the statement, they are not dispositive of the issue. Salazar v. State, 38
S.W.3d 141, 154 (Tex.Crim.App. 2001).
            During an evidentiary hearing, Officer Cordero testified that on December 7, 2006, while
on duty at the El Paso Police Department’s Central Regional Command he took a report from
Ms. Zamarripa. He observed that Ms. Zamarripa’s face and lip were red and swollen on the left
side, and that her eye was slightly swollen and starting to bruise. She also had a scratch on her
forehead. Officer Cordero also testified that Ms. Zamarripa appeared “very emotional,” as if she
were holding back tears. As Ms. Zamarripa told Officer Cordero how she was injured, she
appeared nervous and frightened. The officer stated that he did not detect the odor of alcohol at
any time during the interview. After speaking with Ms. Zamarripa, she and the officer went to
the residence where she alleged she had been attacked by Appellant. Officer Cordero testified
that while he and his partner approached the house, Ms. Zamarripa remained several houses
away, and still appeared scared and nervous. After the officers arrested Appellant, they met with
Ms. Zamarripa again and took an official report of the attack.
            Still outside the presence of the jury, the trial court took defense counsel’s hearsay
objection under advisement, and Officer Cordero proceeded to recount what Ms. Zamarripa told
him about the source of her injuries. Officer Cordero explained that Ms. Zamarripa stated that
she had been assaulted by Appellant the night before. She stated that she and Appellant had an
argument on their way home from a night club. Once they arrived home, Ms. Zamarripa got out
of the car, and as she walked toward the front door Appellant grabbed her by the hair from
behind, and she fell to the ground. While she was still on the ground, Appellant punched her
face and kicked her several times. Then Appellant picked her up off the ground, and she ran
inside one of the home’s bedrooms, shutting the door behind her. Appellant followed her, forced
the door open and continued to assault her by choking her and punching her in the face. 
Ms. Zamarripa told the officer the assault happened between three and four in the morning. She
arrived at the police station and told Officer Cordero about the attack at approximately 8:40 later
that morning.
            In response to Officer Cordero’s testimony, Appellant called Ms. Zamarripa to testify at
the hearing. She testified that she went to the police station and told the officer she had been
assaulted because she was mad at Appellant. According to Ms. Zamarripa, she got in a fight with
two other women at the nightclub where she and Appellant had been drinking the night before.
She testified that she was angry because Appellant had been flirting with these women, and that
all she remembered was fighting in the parking lot outside the bar. She testified that Appellant
stopped the fight, put her in the car and took her home. The next morning, Ms. Zamarripa was
still angry with Appellant for flirting with the other women, and she claimed she went to the
police station and filed the report to get him in trouble. She told the court that the story she told
Officer Cordero was a lie.
            Based on Officer Cordero’s testimony, the trial court overruled defense counsel’s
objection, and admitted the officer’s testimony regarding Ms. Zamarripa’s statement under the
excited utterance exception. Appellant contends that Ms. Zamarripa’s statement could not be
classified as an excited utterance because the amount of time and opportunity for reflection
between the alleged assault and the police report.
            As stated above, while the passage of time is a factor to be considered when determining
whether a declarant remained under the influence of the event when she provided the statement,
it is not a dispositive factor. Salazar, 38 S.W.3d at 154. In this instance, based on Officer
Cordero’s account of the circumstances surrounding Ms. Zamarripa’s statement, a reasonable
person could have concluded that she made the statement while still dominated by the emotion,
fear, and pain of the startling event. Accordingly, the trial court did not abuse its discretion
permitting Officer Cordero to testify about Ms. Zamarripa’s statement under the excited
utterance exception to the hearsay rule.
            In the alternative, Appellant argues Officer Cordero’s account of Ms. Zamarripa’s
statement is barred by the Confrontation Clause of the United States Constitution. Appellant
contends that the Confrontation Clause renders Ms. Zamarripa’s statement to police inadmissible
because Appellant was not present during the statement, and was “sleeping peacefully at home,
oblivious to what was going on.” As the State points out, however, the Confrontation Clause is
not implicated in this case because the witness, Ms. Zamarripa, was not absent from trial. See
Crawford v. Washington, 541 U.S. 36, 59, 124 S.Ct. 1354, 1369, 158 L.Ed.2d 177 (2004)(noting
“[t]estimonial statements of witnesses absent from trial have been admitted only where the
declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.”). In this case the declarant, Ms. Zamarripa, was not only available but did, in fact,
testify at trial. Under examination by both the prosecutor and defense counsel, she told the jury
that she had been attacked by two women at a bar, that she went to the police station to get
Appellant in trouble because she was angry with him, and that the story she told Officer Cordero
was a lie. As such, this case does not implicate the Confrontation Clause as Appellant argues. 
Issue Two is overruled.
            Having overruled both of Appellant’s issues, we affirm the trial court’s judgment. 



March 30, 2011
DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)